**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

SETH BERRIOS and CATHERINE BERRIOS,

Plaintiffs,

v.

WALMART INC.,

Defendant.

Case No. ______________________

**COMPLAINT AND DEMAND FOR A JURY TRIAL**

Plaintiffs, SETH BERRIOS and CATHERINE BERRIOS (hereafter referred to as "Plaintiffs"), by and through their undersigned counsel, Morgan & Morgan, P.A., hereby submit the following Complaint and Demand for a Jury Trial against Defendant WALMART INC. (hereafter referred to as "Defendant Walmart", "Walmart", and "Defendant"), and allege the following upon personal knowledge and belief, and investigation of counsel:

## I. THE PARTIES

1. Plaintiff SETH BERRIOS is a natural person over the age of eighteen (18) years who is domiciled and resides in Lee County, Florida, and is therefore a citizen of the State of Florida for purposes of 28 U.S.C. § 1332.

2. Plaintiff CATHERINE BERRIOS is a natural person over the age of eighteen (18) years who is domiciled and resides in Lee County, Florida, and is therefore a citizen of the State of Florida for purposes of 28 U.S.C. § 1332.

3. Defendant WALMART INC. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 702 S.W. 8th Street, Bentonville, Arkansas 72716. Pursuant to 28 U.S.C. § 1332(c)(1), Walmart is a citizen of the State of Delaware and of the State of Arkansas. Walmart is not a citizen of the State of Florida.

4. Walmart is registered with the Florida Department of State, Division of Corporations, and is authorized to transact and does transact business in the State of Florida. Its registered agent for service of process in Florida is CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.

5. Walmart owns and operates retail stores in Lee County, Florida, including the Walmart Supercenter #987, located at 14821 Ben C Pratt/6 Mile Cypress Pkwy, Fort Myers, Florida 33912, and maintains employees, managers, and other representatives in Lee County, Florida.

6. At all times material hereto, Walmart was engaged in the business of purchasing, warehousing, distributing, marketing, advertising, offering for sale, and selling consumer products to members of the general public, including Instant Pot®

brand programmable electric pressure cookers, and derived revenue and profit from doing so.

## II. JURISDICTION AND VENUE

7. This Court has original subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

8. Complete diversity of citizenship exists. Plaintiffs are citizens of the State of Florida. Walmart is a citizen of the State of Delaware and of the State of Arkansas. No Plaintiff is a citizen of the same State as Walmart.

9. The amount in controversy as to Plaintiff SETH BERRIOS, considered separately and without aggregation of any other claim, exceeds the sum or value of $75,000, exclusive of interest and costs.

10. The amount in controversy as to Plaintiff CATHERINE BERRIOS, considered separately and without aggregation of any other claim, exceeds the sum or value of $75,000, exclusive of interest and costs.

11. This Court has personal jurisdiction over Walmart because Walmart is registered to do business in Florida, operates numerous retail stores in Florida, and is engaged in continuous and systematic business activity in this State and in this

District, and because the claims asserted in this action arise out of and relate to Walmart's retail sales activity in this State and in this District.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted in this action, including the retail sale of the subject product and the incident in which Plaintiffs were injured, occurred in this District.

13. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and § 1391(c)(2) and (d), because Walmart is subject to this Court's personal jurisdiction with respect to this action and maintains contacts within this District sufficient to subject it to personal jurisdiction if this District were a separate State, and Walmart is therefore deemed to reside in this District.

14. This action is properly brought in the Fort Myers Division pursuant to Local Rule 1.04(b) of this Court. SETH BERRIOS and CATHERINE BERRIOS each reside in Lee County, and the incident occurred in Lee County, which is within the Fort Myers Division. This is the division to which this action is most directly connected and in which it is most conveniently advanced.

15. This action is timely. Plaintiffs' causes of action accrued on or about September 10, 2022, prior to the effective date of chapter 2023-15, Laws of Florida (March 24, 2023), and are therefore governed by the four-year limitations period of

section 95.11(3), Florida Statutes (2022). This action is further brought within twelve (12) years of the delivery of the subject product to its first purchaser, and is therefore not barred by section 95.031(2)(b), Florida Statutes.

## III. THE SUBJECT INSTANT POT® PRESSURE COOKER

16. The product that is the subject of this civil action is an Instant Pot® Programmable Electric Pressure Cooker, Model IP-DUO60, bearing Serial Number 150560.6298, and a Date Code of 1505 (the "subject Instant Pot"). [Figures 1 and 2]




Figure 1




Figure 2

17. The subject Instant Pot is a six-quart, 120-volt, 1000-watt electric appliance intended and marketed for household use in cooking food under pressure. It is a "product" within the meaning of Florida products liability law.

18. Upon information and belief, the serial number of the subject Instant Pot reflects that it was manufactured in or about May 2015.

19. On a date not yet determined, Mariam Berrios, the grandmother of Plaintiff SETH BERRIOS, and the mother-in-law of Plaintiff CATHERINE BERRIOS, purchased the subject Instant Pot from Walmart Supercenter #987, located at 14821 Ben C Pratt/6 Mile Cypress Pkwy, Fort Myers, Florida 33912.

20. The subject Instant Pot bears an Underwriters Laboratories Listed mark, UL 9H06 E214884.

21. On or about September 27, 2013, an Underwriters Laboratories listing, UL 9H06 E214884, was issued for the Instant Pot® Programmable Electric Pressure Cooker, Model IP-DUO60.

22. UL 136, Standard for Safety for Pressure Cookers, is the published industry safety standard applicable to the subject Instant Pot. Section 9 of UL 136, the Cover Opening Test, requires in substance that an ordinary user not be capable of manually defeating the holding action of the lid clamping device when the pressure within the cooker reaches a value that creates a risk of injury to persons, and that escape of steam or contents creating a risk of injury not occur upon application of a force of 100 pounds (445 N).

23. The subject Instant Pot was designed and manufactured to the specification that its lid could not be rotated open with less than 100 pounds of

rotational force while the contents of the pot remained under sufficient pressure to cause injury if opened.

24. Generally accepted and published industry standards, including UL 136, require that an electric pressure cooker of this type be designed and manufactured so that the lid cannot be opened under normal and reasonably foreseeable consumer use while the contents remain under sufficient pressure to cause injury.

**<u>Safety Representations Accompanying the Product</u>**

25. The subject Instant Pot was sold in packaging, and was accompanied by an instruction manual and product literature, that made affirmative representations concerning the safety of the lid-locking system.

26. The Instant Pot® User Manual accompanying the subject Instant Pot stated: "As a safety feature, until the float valve drops down, the lid is locked and cannot be opened."

27. Product literature and marketing materials for the Instant Pot® IP-DUO series represented that the appliance was protected by "10 proven safety mechanisms and patented technologies," and that if the cooker remained pressurized the lid would be locked to prevent accidental opening.

28. The packaging in which Instant Pot® IP-DUO60 units were sold bore the representations “Safe, Convenient and Dependable,” “10 Proven Safety Mechanisms,” “Pressure Regulator Protection,” and “Leaky Lid Protection.”

29. Product literature further represented that the appliance “passed the stringent UL certification giving you uncompromised safety and peace of mind.”

30. These representations were displayed on the product packaging as the product sat on Walmart’s retail shelves, were visible to Walmart’s customers at the point of sale, and were delivered by Walmart to the purchaser together with the product.

## IV. WALMART’S ROLE IN THE SALE AND CHAIN OF DISTRIBUTION

31. Walmart sold the subject Instant Pot to Mariam Berrios in the regular and ordinary course of Walmart’s retail business.

32. Walmart was a link in, and a participant in, the chain of distribution by which the subject Instant Pot was placed into the stream of commerce and delivered to the consuming public in the United States.

33. Walmart is and was in the business of selling products of the kind of the subject Instant Pot, purchased such products for resale, held such products out for sale to the public, and derived economic benefit and profit from the sale of such products.

34. Walmart purchased Instant Pot® pressure cookers for resale in quantity, warehoused and transported them through its own distribution network, placed them on its retail shelves, advertised and promoted them, and sold them to consumers.

35. Walmart exercised control over the selection of the products it offered for sale, over the vendors from whom it purchased those products, over the terms on which it purchased them, and over the product-safety requirements it imposed upon its vendors.

36. Walmart had the practical and contractual ability to require its vendors to demonstrate compliance with applicable safety standards, to require its vendors to disclose consumer complaints, adverse incident reports, warranty returns, and litigation concerning the products Walmart sold, and to decline to sell or to discontinue selling a product that Walmart learned was causing injuries to consumers.

37. The subject Instant Pot was expected to and did reach Mariam Berrios, CATHERINE BERRIOS, and SETH BERRIOS without substantial change in the condition in which it was sold by Walmart.

38. Walmart sold the subject Instant Pot in its original manufacturer's packaging, together with the manufacturer's warnings, instructions, and safety

representations. Walmart did not add to, modify, correct, qualify, or supplement any of the warnings, instructions, or safety representations that accompanied the product.

39. Walmart did not inspect, sample, or test the subject Instant Pot, or Instant Pot® IP-DUO60 units generally, to determine whether the lid-locking mechanism performed as represented and as required by UL 136 before offering those products for sale to Florida consumers.

## V. THE DEFECTIVE AND UNREASONABLY DANGEROUS CONDITION OF THE PRODUCT

### The Lid-Opening and Pressurization Hazard

40. An electric pressure cooker of the type of the subject Instant Pot operates by heating liquid within a sealed pot so as to raise the internal pressure and the boiling point of the contents. The contents of a pressurized unit are heated above the boiling temperature of water at atmospheric pressure.

41. If the lid of such a unit is removed or partially rotated while pressure remains within the pot, the sudden decompression causes the superheated contents to flash to steam and to erupt from or be expelled from the pot. If the superheated contents contact any person in the vicinity, that contact can cause severe scalding burn injuries.

42. Because this hazard is catastrophic and instantaneous, the entire safety architecture of an electric pressure cooker depends upon an effective lid-locking

interlock system that reliably prevents the lid from being rotated and removed by an ordinary consumer, using ordinary force, so long as hazardous pressure remains inside the pot.

43. The subject Instant Pot did not reliably prevent the lid from being rotated and removed by an ordinary consumer using ordinary force while hazardous pressure, steam, and superheated contents remained within the pot.

44. The subject Instant Pot was in a defective condition unreasonably dangerous to the user and to persons in the vicinity of its use at the time it left Walmart's possession and control, in that, among other things:

a. It was designed and manufactured in a manner that permitted the lid to be rotated and opened by an ordinary consumer, using ordinary force, while hazardous pressure remained inside the unit;

b. Its lid-locking pin assembly and locking-lug design failed to prevent the locking pin, and therefore the lid, from rotating while the unit remained pressurized;

c. Its lid-locking mechanism lacked the strength, rigidity, dimensional tolerance, and resistance to torsional deflection necessary to prevent the lid from rotating and opening while the unit remained pressurized;

d. The alloy and section geometry used in the lid-locking pin assembly did not provide the strength and rigidity necessary to hold the lid closed under the loads generated in normal use;

e. The lid-locking mechanism contained excessive play and tolerance, which permitted the lid to be rotated while the unit remained pressurized;

f. The float valve's position, location, size, and travel made it difficult or impossible for an ordinary consumer to determine reliably whether hazardous pressure remained within the unit, and required the consumer to approach the hazard in order to attempt to make that determination;

g. The float valve could indicate, or appear to the ordinary consumer to indicate, that the unit was not pressurized when in fact hazardous pressure remained inside;

h. The unit failed to incorporate an interlock, indicator, or other safety feature adequate to prevent the lid from being opened while hazardous pressure remained inside;

i. The unit did not conform to UL 136, Standard for Safety for Pressure Cookers, notwithstanding that it bore an Underwriters Laboratories Listed mark;

j. The unit did not conform to the design and manufacturing specification that the lid not be openable with less than 100 pounds of rotational force while pressurized;

k. The warnings, labeling, packaging, and User Manual failed to warn that the lid of the unit could in fact be rotated and opened while hazardous pressure remained inside, and failed to warn of the resulting risk of severe scalding burn injuries;

l. The User Manual and marketing materials affirmatively and falsely represented that, if the lid was in the locked position, it could not be opened until the float valve dropped, thereby inducing consumers to rely upon a safety feature that did not reliably function;

m. The warnings and instructions failed to provide any adequate method by which a consumer could definitively and safely determine whether pressure remained within the unit after the completion of a cooking cycle and after releasing steam;

n. Reasonable, economical, and technologically feasible safer alternative designs were available that would have prevented the lid from being rotated and opened while the unit remained pressurized, without impairing the utility or intended purpose of the product; and

o. The unit was otherwise defective, unsafe, and unreasonably dangerous.

45. The subject Instant Pot failed to perform as safely as an ordinary consumer would expect when used as intended and in a reasonably foreseeable manner.

46. The subject Instant Pot was dangerous to an extent beyond that which would be contemplated by an ordinary consumer possessing the ordinary knowledge common to the community as to its characteristics. An ordinary consumer would not contemplate that the lid of an electric pressure cooker bearing a UL Listed mark and marketed with a lid-lock safety feature could be rotated open while superheated contents remained under pressure inside.

47. The risks presented by the subject Instant Pot in the condition in which it was sold exceeded the utility of the product in that condition.

48. The defective and unreasonably dangerous condition of the subject Instant Pot was latent. Neither SETH BERRIOS nor CATHERINE BERRIOS could

have discovered the defective condition through the exercise of due care, and neither had knowledge of it.

**The Available Safer Alternative Design**

49. On or before October 26, 2017, an Instant Pot® Electric Pressure Cooker, Model IP-DUO60 V2.1, incorporating a new construction of the lid locking pin assembly, was submitted to Underwriters Laboratories for examination and testing.

50. On or about October 26, 2017, following Cover Opening and Locking Mechanism Operation testing conducted pursuant to UL 136, Underwriters Laboratories issued a new certification of the UL listing for the Model IP-DUO60 V2.1 and certain other Instant Pot® products.

51. The locking pin assembly used in IP-DUO60 V3 units differs from the locking pin assembly used in IP-DUO60 V2 units in dimension, in the orientation of the central stiffening rib, and in mass. The V3 locking pin assembly weighs approximately twenty-five percent (25%) more than the V2 locking pin assembly. [Figure 3]




Figure 3

52. Engineering analysis comparing the two components demonstrates that the V3 locking pin assembly is materially more resistant to torsional bending than the V2 locking pin assembly.

53. Upon information and belief, replacement lids compatible with IP-DUO60 units and incorporating the same locking pin assembly used in IP-DUO60 V3 units have been commercially available since those lids were first manufactured in late 2017 or early 2018.

54. The safer alternative design was therefore known, technologically feasible, and commercially available years before the subject Instant Pot was sold to Mariam Berrios and years before the incident described below.

## VI. NOTICE OF THE HAZARD PRIOR TO THE SALE AND PRIOR TO PLAINTIFFS' INJURIES

55. Beginning no later than 2016, consumers reported to the manufacturer and distributor of Instant Pot® pressure cookers that the lids of those products opened, or were capable of being opened, while the units remained pressurized, expelling superheated contents and causing serious scalding burn injuries.

56. Representative consumer reports received in 2016 and 2017 described the same failure mode present here: that after the cooking cycle completed, the lid nonetheless rotated open and the contents erupted from the pot, causing first-, second-, and third-degree burns requiring emergency and burn-unit treatment. Several of those reports expressly questioned why the advertised lid-lock safety feature had not prevented the lid from opening.

57. Upon information and belief, numerous additional consumer reports of this failure mode were received in each of the years 2016 through 2022.

58. Beginning in 2018, injured consumers began filing civil actions across the United States alleging that the lid of an Instant Pot® electric pressure cooker opened while the unit remained pressurized, causing burn injuries. Those actions include, without limitation:

a. *Silin v. Instant Brands, Inc.*, No. 5:18-cv-00781 (N.D. Cal., filed Feb. 6, 2018);

b. *Cooper v. Instant Brands, Inc.*, No. 1:18-cv-02611 (D. Colo., filed Aug. 9, 2018);

c. *Hundley v. Instant Brands Inc.*, No. 19-2-23276-5 (Wash. Super. Ct., King Cnty., filed Aug. 1, 2019) (Model IP-DUO60);

d. *Webb v. Instant Brands Inc.*, No. N19C-09-236 (Del. Super. Ct., New Castle Cnty., filed Sept. 24, 2019) (Model IP-DUO60 V2);

e. *Young v. Instant Brands Inc.*, No. 1:19-cv-04461 (N.D. Ga., filed Oct. 3, 2019);

f. *Shipley v. Instant Brands Inc.*, No. 1:19-cv-03235 (D. Colo., filed Nov. 15, 2019);

g. *Elliot v. Instant Brands Inc.*, No. 1:19-cv-03341 (D. Colo., filed Nov. 26, 2019);

h. *Smith v. Instant Brands, Inc.*, No. 5:19-cv-00113 (S.D. Ga., filed Dec. 9, 2019);

i. *Pao v. Instant Brands, Inc.*, No. 4:19-cv-08070 (N.D. Cal., filed Dec. 10, 2019);

j. *Snyder v. Instant Brands, Inc.*, No. 4:19-cv-00212 (M.D. Ga., filed Dec. 16, 2019);

k. *Miller v. Instant Brands, Inc.*, No. 1:19-cv-08237 (N.D. Ill., filed Dec. 17, 2019);

l. *Pedigo v. Instant Brands, Inc.*, No. 1:20-cv-00026 (W.D. Ky., filed Feb. 10, 2020);

m. *Barela v. Instant Brands, Inc.*, No. 2:20-cv-01518 (C.D. Cal., filed Feb. 14, 2020);

n. *Kaigler v. Instant Brands Inc.*, No. 2:20-cv-00887 (E.D. La., filed Mar. 13, 2020);

o. *Gessford v. Instant Brands, Inc.*, No. 1:20-cv-00737 (D. Md., filed Mar. 19, 2020);

p. *Joita v. Corelle Brands, LLC*, No. 2020 L 004788 (Ill. Cir. Ct., Cook Cnty., filed Apr. 30, 2020) (Model IP-DUO60 V2);

q. *Phy v. Instant Brands, Inc.*, No. 6:20-cv-01325 (D. Kan., filed Nov. 20, 2020);

r. *Smith v. Instant Brands Inc.*, No. 1:21-cv-00299 (D. Colo., filed Jan. 29, 2021);

s. *Griffin v. Instant Brands, Inc.*, No. 2:21-cv-01000 (S.D. Ohio, filed Mar. 10, 2021);

t. *Perkins v. Instant Brands, Inc.*, No. 2:21-cv-00229 (D. Utah, filed Apr. 16, 2021);

u. *Dilbeck v. Instant Brands, Inc.*, No. 4:21-cv-00403 (N.D. Okla., filed Sept. 21, 2021);

v. *Butler v. Instant Brands, Inc.*, No. 1:21-cv-05012 (N.D. Ill., filed Sept. 22, 2021);

w. *Cantrelle v. Instant Brands, Inc.*, No. 2:22-cv-00389 (E.D. La., filed Feb. 15, 2022);

x. *Allard v. Instant Brands*, No. 8:22-cv-01390 (M.D. Fla., filed June 20, 2022); and

y. *Woodson v. Instant Brands*, No. 6:22-cv-01399 (M.D. Fla., filed Aug. 8, 2022) (Model IP-DUO60).

59. On June 2, 2022, more than three months before the incident that injured Plaintiffs, a class action was filed against Instant Brands Inc. and others in the United States District Court for the Northern District of Illinois, No. 1:22-cv-02909, alleging that Instant Pot® IP-DUO series products, including the IP-DUO60, have a dangerously defective lid-locking assembly that allows the lid to open while the contents are under pressure during normal and expected use, in violation of UL 136.

60. Prior to September 10, 2022, more than fifty (50) incidents had been reported in which it was alleged that the lid of an Instant Pot® electric pressure cooker opened, or was capable of being opened, while the unit remained pressurized, causing injury.

61. The existence, frequency, and character of these incidents, complaints, and civil actions were publicly known and reasonably ascertainable within the consumer-products retail industry prior to the sale of the subject Instant Pot and prior to September 10, 2022.

62. Upon information and belief, prior to the sale of the subject Instant Pot, Walmart received consumer complaints, product returns, warranty claims, and other reports from its own customers concerning Instant Pot® electric pressure cookers whose lids opened, or were capable of being opened, while pressurized.

63. Upon information and belief, prior to the sale of the subject Instant Pot, Walmart knew or, in the exercise of reasonable care, should have known that Instant Pot® electric pressure cookers of the type it was selling to Florida consumers presented a risk that the lid could be rotated and opened while hazardous pressure remained inside, causing severe scalding burn injuries.

64. At no time prior to September 10, 2022 did Walmart warn its customers, including Plaintiffs, that Instant Pot® pressure cookers had been reported to open, or to be capable of opening, with hazardous pressure still inside the unit.

65. At no time prior to September 10, 2022 did Walmart discontinue the sale of Instant Pot® IP-DUO60 pressure cookers, remove them from its shelves, notify purchasers, or offer purchasers a replacement lid incorporating the redesigned locking pin assembly.

## VII. ENTITIES NOT NAMED AS DEFENDANTS

### A. Instant Brands Inc. and the Chapter 11 Proceedings

66. Upon information and belief, the subject Instant Pot was designed, imported, marketed, and distributed by Instant Brands Inc., a Canadian corporation formerly known as Double Insight Inc. and formerly doing business as "Instant Pot Company."

67. On June 12, 2023, Instant Brands Acquisition Holdings Inc. and certain of its affiliated entities filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, jointly administered under Case No. 23-90716 (the "Bankruptcy Case").

68. In or about November 2023, during the pendency of the Bankruptcy Case, the debtors' appliances business — the business line that included the Instant Pot® electric pressure cooker product line — was sold to an affiliate of Centre Lane Partners.

69. On February 23, 2024, the Bankruptcy Court entered its Findings of Fact, Conclusions of Law, and Order (I) Confirming the Joint Chapter 11 Plan of Reorganization of Instant Brands Acquisition Holdings Inc. and Its Debtor Affiliates and (II) Approving the Disclosure Statement on a Final Basis [Bankr. Dkt. No. 1146] (the "Confirmation Order").

70. The Plan confirmed by the Confirmation Order became effective on or about February 27, 2024, and the reorganized debtors emerged from Chapter 11.

71. Plaintiffs' claims arising out of the incident of September 10, 2022, arose prior to the June 12, 2023 petition date and are prepetition claims within the meaning of the Bankruptcy Code.

72. The Confirmation Order, the confirmed Plan, and the provisions of 11 U.S.C. §§ 524 and 1141 operate to discharge, release, enjoin, or otherwise bar the prosecution of prepetition personal injury claims of the kind asserted here against Instant Brands and the other debtors in the Bankruptcy Case. Instant Brands and the other debtors are therefore not named as defendants in this action.

73. Pursuant to 11 U.S.C. § 524(e), the discharge of a debt of the debtor does not affect the liability of any other entity for such debt. Neither the Bankruptcy Case, the Confirmation Order, nor the confirmed Plan discharges, releases, limits, or otherwise affects the independent liability of Walmart to Plaintiffs under Florida law.

**B. The Foreign Manufacturer**

74. Upon information and belief, the subject Instant Pot was physically manufactured in the People's Republic of China by Guangdong Midea Consumer Electric Manufacturing Co., Ltd. ("Midea"), or by an affiliated Midea entity, under contract with and to the specifications of Instant Brands Inc.

75. Upon information and belief, Midea is a corporation organized and existing under the laws of the People's Republic of China with its principal place of business in the People's Republic of China.

76. Upon information and belief, Midea is not registered or qualified to transact business in the State of Florida, maintains no registered agent for service of process in the State of Florida, maintains no office, place of business, employees, or bank accounts in the State of Florida, and owns no real property in the State of Florida.

77. Upon information and belief, service of process upon Midea would require resort to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, a process that in the People's Republic of China routinely requires many months to more than a year to complete and may not be completed at all.

78. Plaintiffs have not named Midea as a defendant in this action.

79. The unavailability of the manufacturer is not a condition of Walmart's liability under Florida law. Under Florida law, every participant in the chain of distribution of a defective product, including the retail seller, is subject to strict liability in tort to a person injured by that product, without regard to whether the manufacturer is amenable to suit.

## VIII. THE INCIDENT OF SEPTEMBER 10, 2022

80. On or about September 10, 2022, CATHERINE BERRIOS was preparing a meal using the subject Instant Pot at the residence of Mariam Berrios in Lee County, Florida. SETH BERRIOS was present and assisting in the preparation of the meal.

81. The subject Instant Pot contained food and liquid ingredients and was filled to a level below the maximum fill line marked on the inner pot.

82. The subject Instant Pot was being used for its intended purpose of cooking food, in a reasonably foreseeable manner, and in accordance with the instructions provided with the product and the instructional videos published by or on behalf of the product's manufacturer and distributor.

83. The subject Instant Pot had not been misused, altered, modified, repaired, or abused after its sale, and was within its anticipated useful life at the time of the incident.

84. Based upon the completion of the cooking cycle, Plaintiffs reasonably believed that the subject Instant Pot was depressurized and that it was safe to open the lid.

85. As the lid of the subject Instant Pot was rotated to open it, the lid released and the superheated contents of the appliance suddenly and violently erupted from the pot.

86. The superheated contents of the subject Instant Pot struck and scalded both CATHERINE BERRIOS and SETH BERRIOS.

87. The lid-locking mechanism of the subject Instant Pot did not prevent the lid from being rotated and opened while the unit remained pressurized, notwithstanding that the appliance bore a UL Listed mark, and notwithstanding the

express representations that the lid could not be opened while the unit remained pressurized.

88. There was no reasonable cause for the failure of the subject Instant Pot to perform as intended other than a defect in the product itself. The product failed to perform in the manner reasonably to be expected in light of its nature and intended function, during normal and expected operation, and in the absence of any post-sale misuse or abnormal use.

## IX. INJURIES AND DAMAGES OF PLAINTIFF SETH BERRIOS

89. As a direct and proximate result of the sudden release of pressure and discharge of the superheated contents of the subject Instant Pot, SETH BERRIOS sustained serious, painful, disfiguring, and permanent scalding burn injuries to his left arm and left hand. [Figure 4]



Figure 4

90. SETH BERRIOS required and received medical care and treatment for his injuries.

91. As a direct and proximate result of the conduct and product described in this Complaint, SETH BERRIOS has suffered bodily injury and resulting pain and suffering; disability; physical impairment; disfigurement and permanent scarring; mental anguish; loss of capacity for the enjoyment of life; expense of hospitalization, medical care and treatment; and loss of earnings.

92. The damages of SETH BERRIOS are separate and distinct from those of CATHERINE BERRIOS and are not sought jointly with, or in duplication of, the damages of CATHERINE BERRIOS.

## X. INJURIES AND DAMAGES OF PLAINTIFF CATHERINE BERRIOS

93. As a direct and proximate result of the sudden release of pressure and discharge of the superheated contents of the subject Instant Pot, CATHERINE BERRIOS sustained serious, painful, disfiguring, and permanent scalding burn injuries to her left hand and left forearm, extending to her elbow.

94. The injuries of CATHERINE BERRIOS include burns, scarring, and disfigurement, and she has experienced pain and anguish and has been hindered in the performance of her usual and customary duties and activities.

95. The damages of CATHERINE BERRIOS are separate and distinct from those of SETH BERRIOS and are not sought jointly with, or in duplication of, the damages of SETH BERRIOS.

## COUNT I

## STRICT PRODUCTS LIABILITY — DESIGN DEFECT
**(Both Plaintiffs v. Walmart Inc.)**

96. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 95 above as though fully set forth herein.

97. At all times material hereto, Walmart was engaged in the business of selling products of the kind of the subject Instant Pot, and sold the subject Instant Pot as a participant in the chain of distribution of that product.

98. The subject Instant Pot was defectively designed and was in a condition unreasonably dangerous to the user and to persons in the vicinity of its use at the time it left Walmart's possession and control, as set forth above.

99. The subject Instant Pot failed to perform as safely as an ordinary consumer would expect when used as intended and in a reasonably foreseeable manner, and was dangerous to an extent beyond that contemplated by the ordinary consumer with the ordinary knowledge common to the community as to its characteristics.

100. In the alternative, the risk of danger inherent in the design of the subject Instant Pot outweighed the benefits of that design, and reasonable, economical, and technologically feasible safer alternative designs were available at the time the product left the manufacturer's control that would have prevented the lid from being

rotated and opened while the unit remained pressurized, without substantially impairing the usefulness or the intended purpose of the product.

101. The subject Instant Pot reached Plaintiffs without substantial change in the condition in which Walmart sold it.

102. Plaintiffs used the subject Instant Pot for its intended purpose and in a reasonably foreseeable manner.

103. The defective design of the subject Instant Pot was a legal and proximate cause of the injuries and damages sustained by SETH BERRIOS and by CATHERINE BERRIOS.

WHEREFORE, Plaintiffs SETH BERRIOS and CATHERINE BERRIOS each demand judgment against Defendant WALMART INC. for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorney's fees, together with costs of this action and such other and further relief as this Court deems just and proper, and demand trial by jury on all issues so triable.

## COUNT II

## STRICT PRODUCTS LIABILITY — MANUFACTURING DEFECT
**(Both Plaintiffs v. Walmart Inc.) (Pleaded in the Alternative to Count I)**

104. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 95 above as though fully set forth herein.

105. This Count is pleaded in the alternative to Count I pursuant to Federal Rule of Civil Procedure 8(d)(2) and (3).

106. At all times material hereto, Walmart was engaged in the business of selling products of the kind of the subject Instant Pot, and sold the subject Instant Pot as a participant in the chain of distribution of that product.

107. The subject Instant Pot deviated from its intended design and from other units of the same design, in that its lid-locking pin assembly and associated components did not possess the strength, rigidity, dimensional conformity, or tolerance necessary to prevent the lid from being rotated and opened while the unit remained pressurized.

108. The subject Instant Pot was in that defective and unreasonably dangerous condition at the time it left Walmart's possession and control, and reached Plaintiffs without substantial change in that condition.

109. The subject Instant Pot malfunctioned during normal operation, while being used for its intended purpose, within its anticipated useful life, and in the absence of any abnormal use, misuse, alteration, or abuse after sale. Plaintiffs are therefore entitled to the inference that the product was defective at the time it left Walmart's possession and that the defect existed when the product was sold.

110. There was no reasonable cause for the failure of the subject Instant Pot other than a defect in the product.

111. The defective condition of the subject Instant Pot was a legal and proximate cause of the injuries and damages sustained by SETH BERRIOS and by CATHERINE BERRIOS.

WHEREFORE, Plaintiffs SETH BERRIOS and CATHERINE BERRIOS each demand judgment against Defendant WALMART INC. for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorney's fees, together with costs of this action and such other and further relief as this Court deems just and proper, and demand trial by jury on all issues so triable.

## COUNT III

## STRICT PRODUCTS LIABILITY — FAILURE TO WARN
**(Both Plaintiffs v. Walmart Inc.)**

112. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 95 above as though fully set forth herein.

113. At all times material hereto, Walmart was engaged in the business of selling products of the kind of the subject Instant Pot, and sold the subject Instant Pot as a participant in the chain of distribution of that product.

114. The subject Instant Pot presented a danger — that the lid could be rotated and opened by an ordinary consumer using ordinary force while hazardous pressure, steam, and superheated contents remained within the pot — that was not obvious to and would not have been known or appreciated by the ordinary consumer.

115. The subject Instant Pot was sold without any warning of that danger, and without adequate instructions for avoiding it.

116. To the contrary, the labeling, packaging, marketing materials, and User Manual accompanying the subject Instant Pot affirmatively represented that the lid was locked and could not be opened until the float valve dropped, and that the appliance was protected by proven safety mechanisms, thereby concealing the danger and inducing consumers to rely upon a safety feature that did not reliably function.

117. The absence of an adequate warning rendered the subject Instant Pot defective and unreasonably dangerous at the time it left Walmart's possession and control.

118. Had an adequate warning been given, Plaintiffs would have heeded it and would not have opened the lid of the subject Instant Pot in the manner in which it was opened, and the incident and Plaintiffs' injuries would not have occurred.

119. The failure to warn was a legal and proximate cause of the injuries and damages sustained by SETH BERRIOS and by CATHERINE BERRIOS.

WHEREFORE, Plaintiffs SETH BERRIOS and CATHERINE BERRIOS each demand judgment against Defendant WALMART INC. for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorney's fees, together with costs of this action and such other and further relief as this Court deems just and proper, and demand trial by jury on all issues so triable.

**COUNT IV**
**NEGLIGENCE**
**(Both Plaintiffs v. Walmart Inc.)**

120. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 95 above as though fully set forth herein.

121. Walmart owed Plaintiffs, and the members of the consuming public who purchase and use the products Walmart sells and who are foreseeably in the vicinity of their use, a duty to exercise reasonable care in the selection, purchase, inspection, testing, marketing, advertising, distribution, and sale of the products it places on its shelves, and a duty to exercise reasonable care to warn of dangers presented by those products of which it knew or reasonably should have known.

122. Walmart breached that duty, and was negligent, in one or more of the following respects:

a. In selling, offering for sale, and continuing to sell the Instant Pot® IP-DUO60 electric pressure cooker when Walmart knew or, in the exercise of reasonable care, should have known that the lid-locking mechanism of that product did not reliably prevent the lid from being opened while the unit remained pressurized;

b. In failing to exercise reasonable care in the selection and vetting of the products it purchased for resale to Florida consumers;

c. In failing to require its vendor to demonstrate that the product conformed to UL 136, Standard for Safety for Pressure Cookers, and to the specification that the lid not be openable with less than 100 pounds of rotational force while pressurized;

d. In failing to require its vendor to disclose consumer complaints, adverse incident reports, warranty returns, and civil actions concerning the lid-opening hazard of Instant Pot® pressure cookers;

e. In failing to monitor, collect, review, and analyze consumer complaints, product returns, warranty claims, adverse incident

reports, and publicly available litigation and regulatory information concerning the products it sold;

f. In failing to warn its customers, including Plaintiffs, that the lids of Instant Pot® pressure cookers had been reported to open, and to be capable of opening, while hazardous pressure remained inside the unit;

g. In failing to warn its customers, including Plaintiffs, that the representation that the lid was locked and could not be opened until the float valve dropped was not reliably true;

h. In failing to provide any adequate instruction by which a consumer could definitively and safely determine whether hazardous pressure remained within the unit after the completion of a cooking cycle and the release of steam;

i. In distributing and selling, and in continuing to distribute and sell, a product bearing safety representations that Walmart knew or should have known were false or misleading;

j. In failing to remove the product from its shelves or to discontinue its sale after Walmart knew or should have known of the lid-opening hazard;

k. In failing to notify prior purchasers, after Walmart knew or should have known of the lid-opening hazard;

l. In failing to notify purchasers of the availability of a replacement lid incorporating the redesigned locking pin assembly; and

m. In otherwise failing to exercise reasonable care under the circumstances.

123. Walmart knew or should have known that Plaintiffs, as members of the consuming public for whom the subject Instant Pot was placed on the market, would use or would foreseeably be in the vicinity of the use of the subject Instant Pot in the manner described in this Complaint.

124. Walmart, as a seller and distributor of consumer appliances, is held to the standard of care of an expert in its field.

125. Plaintiffs did not have substantially the same knowledge regarding the dangers of the subject Instant Pot as did Walmart.

126. Walmart's negligence was a legal and proximate cause of the injuries and damages sustained by SETH BERRIOS and by CATHERINE BERRIOS.

WHEREFORE, Plaintiffs SETH BERRIOS and CATHERINE BERRIOS each demand judgment against Defendant WALMART INC. for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of

interest, costs, and attorney's fees, together with costs of this action and such other and further relief as this Court deems just and proper, and demand trial by jury on all issues so triable.

## COUNT V

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
**§ 672.314, Fla. Stat.**
**(Both Plaintiffs v. Walmart Inc.)**

127. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 95 above as though fully set forth herein.

128. Walmart is a "merchant" with respect to goods of the kind of the subject Instant Pot within the meaning of section 672.104, Florida Statutes.

129. The subject Instant Pot was purchased directly from Walmart by Mariam Berrios, the grandmother of Plaintiff SETH BERRIOS, and the mother-in-law of Plaintiff CATHERINE BERRIOS.

130. Pursuant to section 672.318, Florida Statutes, Walmart's warranties, whether express or implied, extend to any natural person who is in the family or household of its buyer, or who is a guest in the buyer's home, if it is reasonable to expect that such person may use, consume, or be affected by the goods. SETH BERRIOS is such a person, it was reasonable to expect that he would use, consume, or be affected by the subject Instant Pot, and he was injured in person by the breach of warranty alleged herein.

131. By selling the subject Instant Pot, Walmart impliedly warranted that it was merchantable; that it would pass without objection in the trade under the contract description; that it was of fair average quality; and that it was fit for the ordinary purposes for which such goods are used.

132. The subject Instant Pot was not merchantable and was not fit for the ordinary purpose for which such goods are used, in that its lid could be rotated and opened by an ordinary consumer using ordinary force while hazardous pressure, steam, and superheated contents remained within the pot.

133. Plaintiffs relied upon the implied warranty of merchantability in acquiring and using the subject Instant Pot.

134. Walmart's breach of the implied warranty of merchantability was a legal and proximate cause of the injuries and damages sustained by SETH BERRIOS and by CATHERINE BERRIOS.

WHEREFORE, Plaintiffs SETH BERRIOS and CATHERINE BERRIOS each demand judgment against Defendant WALMART INC. for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorney's fees, together with costs of this action and such other and further relief as this Court deems just and proper, and demand trial by jury on all issues so triable.

## COUNT VI

## BREACH OF EXPRESS WARRANTY
**§ 672.313, Fla. Stat.**
**(Both Plaintiffs v. Walmart Inc.) (Pleaded in the Alternative)**

135. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 95 above as though fully set forth herein.

136. The subject Instant Pot was purchased directly from Walmart by Mariam Berrios, the grandmother of SETH BERRIOS and the mother-in-law of CATHERINE BERRIOS. Pursuant to section 672.318, Florida Statutes, Walmart's warranties extend to Plaintiffs as members of the buyer's family or household who could reasonably be expected to use, consume, or be affected by the goods.

137. Walmart offered the subject Instant Pot for sale in packaging bearing, and delivered the subject Instant Pot together with product literature and a User Manual containing, affirmations of fact and descriptions of the goods concerning the safety of the lid-locking system, including that the lid was locked and could not be opened until the float valve dropped, that the appliance was protected by ten proven safety mechanisms, and that the appliance had passed UL certification.

138. By offering and selling the product with those affirmations of fact and descriptions displayed on and delivered with the goods, Walmart adopted them and made them part of the basis of the bargain between Walmart and its buyer.

139. Those affirmations of fact and descriptions created express warranties that the goods would conform to them.

140. The subject Instant Pot did not conform to those affirmations and descriptions, in that its lid could be rotated and opened by an ordinary consumer using ordinary force while hazardous pressure, steam, and superheated contents remained within the pot.

141. Plaintiffs relied upon those affirmations and descriptions in acquiring and using the subject Instant Pot, and would not have purchased or used the product had they known that the lid could be opened while pressurized.

142. Walmart has received notice of the breach alleged herein. To the extent any further notice is required by section 672.607(3)(a), Florida Statutes, the service of this Complaint constitutes such notice.

143. Walmart's breach of express warranty was a legal and proximate cause of the injuries and damages sustained by SETH BERRIOS and by CATHERINE BERRIOS.

WHEREFORE, Plaintiffs SETH BERRIOS and CATHERINE BERRIOS each demand judgment against Defendant WALMART INC. for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorney's fees, together with costs of this action and such other

and further relief as this Court deems just and proper, and demand trial by jury on all issues so triable.

## CLAIM FOR PUNITIVE DAMAGES

144. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 95 above as though fully set forth herein.

145. The pleading requirement of section 768.72(1), Florida Statutes, does not apply in this Court. It conflicts with, and must yield to, Federal Rule of Civil Procedure 8(a)(3). See *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (11th Cir. 2000). Plaintiffs therefore plead their demand for punitive damages without first obtaining leave of court.

146. Walmart continued to purchase, stock, market, and sell Instant Pot® IP-DUO60 electric pressure cookers to Florida consumers after it knew or, in the exercise of reasonable care, should have known that the lid-locking mechanism of that product did not reliably prevent the lid from being rotated open while the unit remained pressurized, and that consumers were sustaining severe scalding burn injuries as a result.

147. Walmart continued to sell that product bearing packaging and literature representing that the lid was locked and could not be opened until the float valve

dropped, when Walmart knew or should have known that the representation was not reliably true.

148. Walmart took no action to warn its customers, to remove the product from its shelves, to notify prior purchasers, or to advise purchasers of the availability of a replacement lid incorporating the redesigned locking pin assembly.

149. That conduct constituted gross negligence within the meaning of section 768.72(2)(b), Florida Statutes, in that it was so reckless and wanting in care that it constituted a conscious disregard and indifference to the life, safety, and rights of persons exposed to the product, including Plaintiffs.

150. Walmart is liable for punitive damages pursuant to section 768.72(3)(b) and (c), Florida Statutes, in that the officers, directors, or managers of Walmart knowingly condoned, ratified, or consented to the conduct described above, and in that Walmart itself engaged in conduct constituting gross negligence that contributed to the loss, damages, and injuries suffered by Plaintiffs.

151. Plaintiffs are entitled to recover punitive damages from Walmart in an amount to be determined by the jury, subject to the limitations of section 768.73, Florida Statutes.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs SETH BERRIOS and CATHERINE BERRIOS respectfully demand judgment against Defendant WALMART INC., separately as to each Plaintiff, as follows:

a. Compensatory damages in favor of SETH BERRIOS in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorney's fees, in an amount to be determined by the jury;

b. Compensatory damages in favor of CATHERINE BERRIOS in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorney's fees, in an amount to be determined by the jury;

c. Punitive damages in favor of each Plaintiff in an amount to be determined by the jury;

d. Prejudgment and post-judgment interest as allowed by law;

e. Taxable costs of this action;

f. Attorney's fees to the extent permitted by law; and

g. Such other and further relief as this Court deems just and proper.

**<u>DEMAND FOR A JURY TRIAL</u>**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs SETH BERRIOS and CATHERINE BERRIOS demand a trial by jury on all issues so triable as of right.

Dated: September 9, 2026.

/s/Michael Goetz__________________
Michael Goetz, Esq.
Florida Bar #963984
Morgan & Morgan
Complex Litigation Group
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
813-223-5505
MGoetz@forthepeople.com
*Attorneys for Plaintiffs*